UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

Christopher T. Mosley,

                            Plaintiff,

      v.

Commissioner of Social Security,

                            Defendant.

**Decision and Order**

19-CV-201 HBS
(Consent)

───────────────────────────────

## I.  INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 4, pages hereafter cited in brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 7, 10.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II of the Social Security Act.  The Court has deemed the motions submitted on papers under Rule 78(b).

## II.  DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We must first decide whether HHS applied the correct legal principles in making the determination.  We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the issues that plaintiff has raised, the one that draws the Court's immediate attention concerns the ALJ's consideration of Listing 1.04. The ALJ found that plaintiff had the severe impairments of multi-level degenerative disc disease and asthma. [15.] In proceeding to a determination of an RFC for sedentary work, the ALJ decided in the following paragraph that plaintiff did not meet Listing 1.04:

> The medical evidence does not show a spinal disorder resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with: (a) evidence of nerve or compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness, accompanied by sensory or reflex loss and, if there is involvement of the lower back, a positive straight-[leg] raising test (sitting and supine), (b) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours, or (c) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b), thus the severity criteria of Listing 1.04 have not been met.

[17.] Plaintiff objects that the ALJ's decision about Listing 1.04 is conclusory and does not indicate whether the ALJ considered evidence that would fall under the listing:

> First, as found at Step 2, the ALJ found "multi-level degenerative disc disease" to be severe. T 12. The ALJ cited to x-ray and MRI reports showing degenerative disc disease. T 13. Thus, the record clearly establishes a disorder of the spine.
>
> Second, there is diagnostic and clinical findings of compromised nerve root. On April 17, 2014, an MRI of the thoracic spine revealed diffuse broad-based disc bulge from C3-4 through T6-7, T 10-11 causing effacement of the anterior thecal sac. T 253. On May 12, 2014, an MRI of the lumbar spine revealed, *inter alia*: (1) at L5-S1, a right paracentral disc herniations with annular tear, abutting the right S1 nerve in the right lateral recess. T 247-48, 253-54, 259-60. On August 1, 2017, an MRI of the lumbar spine revealed: at the L5-S1 level, a large right subarticular disc extrusion with caudal migration of approximately 14 mm which is contacting and

4

>    displacing the descending right S1 nerve root and likely contacting the descending right S2 nerve root as well; and (2) moderate bilateral neural foraminal narrowing at the L4-L5 level.  T 689-90.  At Steps 2 and 3, the ALJ did not discuss the multiple MRI reports showing compromise of the nerve root.  The ALJ failed to cite to the most recent MRI report from August 1, 2017 anywhere in her decision, and the lack of discussion of the MRI showing displacement of a least 1 nerve root prevents meaningful review of the ALJ's decision.  T 15-16, 17.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1041 (2d Cir. 1983) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982) ("we would not hesitate to remand the case for further findings or a clearer explanation for the decision")); *Yeomas v. Colvin*, 2015 WL 1021796, at *19 (W.D.N.Y. Mar. 10, 2015).  There is no conflicting evidence regarding the diagnostic imaging findings, and the ALJ was required evaluate the positive findings.
>
>    Further, multiple providers diagnosed Plaintiff with radiculopathy upon examination and review of the diagnostic imaging, and this supports nerve root compromise.  T 642, 645, 648, 675, 679, 707.  "Radiculopathy" is defined as "'[a] disease or abnormality of a dorsal or ventral (sensory or motor) spinal nerve root from the point where it merges with the spinal cord (or brain stem) to the point where it joins its companion root (a motor or a sensory) to form a spinal nerve.'" *Pagan v. Chater*, 1996 WL 591188, n 1 (S.D.N.Y. Oct. 15, 1996) (quoting J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder, at 5 (1995 ed.)).  "Radiculopathy is generally defined as 'irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root.'"  *Oz v. Lorowitz*, 2012 WL 4560460, n 3 (S.D.N.Y. Sept. 30, 2012) (quoting *Radiculopathy*, Free Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/radiculopathy).  Thus, the multiple medical diagnoses of radiculopathy of both the cervical spine and lumbar spine support compression of a nerve root.
>
>    Third, there is evidence of neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss.  The record shows pain radiating from the neck into the upper extremities and from the back into the buttocks into the legs.  T 245, 250, 256, 267, 277, 311, 681, 685.  The record is replete with findings of range of motion deficits in both the cervical and lumbar spine.  T 247, 252, 258, 294, 311, 348-52, 355-56, 638, 641, 644, 647, 669, 687.  There was weakness in the left shoulder for forward flexion, abduction, elbow flexion, and wrist extension, and weakness in left foot dorsiflexion.  T 638, 645, 648.  He could not perform heel and toe walking.  T 293.  He could not perform squat.  T 293.  "Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss."  20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.00(E)(1).  Thus, the record establishes neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss.

(Dkt. No. 7-1 at 15–17; *see also* Dkt. No. 13 at 2.)  The Commissioner counters that plaintiff's

medical record does not, in fact, support all of the criteria for Listing 1.04:

5

> The record supports the ALJ's assessment. Subsection c of the Listing is not satisfied because rather than finding spinal stenosis, the record shows that MRIs found no evidence of any spinal stenosis (T253-254). Similarly, the record does not contain any report of spinal arachnoiditis in the record, so subsection b of the Listing is not satisfied.
>
> With respect to subsection c, only a single MRI showed contact with a nerve root (T689-690). Further, that MRI took place in August 2017 and there is no evidence that even the contact—not compromise—lasted the required 12 month durational period. Notably, MRIs in 2014 did not report any compromise of nerve roots (T253-254). Similarly, while Plaintiff sometimes presented with limited spinal ROM, the limitations were due to pain complaints and he was inconsistent in that he alleged disabling pain caused such limitations, but then he continued his Marijuana use despite the fact that such use prevented doctors from prescribing narcotic pain relievers (T279). Also, he stopped PT because it hurt (T44), did not go to PT (T681), and sometimes did not timely fill some prescriptions (T671 (claimed Pharmacy did not have Flexeril)). If the pain and limitations were as significant as he asserted, then it would be reasonable to expect he would stop smoking Marijuana so as to obtain opiate pain medications, like Tramadol. Instead, as set forth in more detail in Point 3 below, his allegations of pain and pain-related limitations are questionable because he chose to keep using Marijuana, keep testing positive on toxicology screens, and, thus, was not be eligible to be prescribed stronger pain relievers. What's more, the record is clear that there was no atrophy found despite his allegation of limited activities (T294). His strength was full (T247, 258, 294). Reflexes were consistently intact (T247, 258, 279, 294, 639). Similarly, sensory exam was repeatedly found to be normal (T247, 294, 665). Plaintiff denied any neurological symptoms (T659, 663).
>
> In sum, Plaintiff failed to prove that he satisfied the Listing.

(Dkt. No. 10-1 at 18–19.)

Plaintiff has the better argument for now. "When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (citation omitted). That said, "[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (internal quotation marks and citation omitted); *cf. Petty v. Berryhill*, No. 14-CV-01883 (APM), 2018 WL

6

4853899, at *3 (D.D.C. Oct. 5, 2018) ("The Commissioner cannot now backfill a justification for the agency's action that the agency itself did not rely upon to avoid the payment of attorney's fees.") (citations omitted); *DeGarmo v. Comm'r*, No. 1:12 CV 2740, 2014 WL 903109, at *8 (N.D. Ohio Mar. 7, 2014) (noting that "the Commissioner's counsel cannot here backfill an analysis left undone by an ALJ by freshly combing the record for supporting evidence the ALJ might have used but didn't"). Rationalization is the problem here regarding the assessment of Listing 1.04. Listing 1.04 addresses disorders of the spine and can be satisfied by any of three different sets of criteria. To summarize, the three sets of criteria involve evidence of nerve root compression with pain, limited motion, and combined motor and sensory loss with a positive straight-leg raising test; spinal arachnoiditis; and lumbar spinal stenosis resulting in pain and an inability to ambulate effectively. Listing 1.04, 20 C.F.R. § Pt. 404, Subpt. P, App. 1. There is at least some evidence in the record for at least some of the symptoms in Listing 1.04. For example, plaintiff had limited range of motion and a positive straight-leg raising test during the consultative physical examination to which the ALJ assigned great weight. [21, 297.] Plaintiff's surgery in July 2014 explicitly included procedures for "decompression of [the] spinal cord and bilateral C6 nerve roots" to address "intractable intolerable neck and radiating arm discomfort." [240.] Doctors attempted to address plaintiff's radiculopathy on multiple occasions from 2014 to 2017. [642, 671, 682, 685.] In August 2017, an MRI of plaintiff's lumbar spine showed caudal migration that was "displacing the descending right S1 nerve root and likely contacting the descending right as to nerve root as well." [693.] Other medical information exists in the record that potentially implicates Listing 1.04, and the Court's point here is not to conduct a complete medical analysis. The point is that the Court cannot tell from the ALJ's decision whether the ALJ considered any of the above medical information. As the Court quoted above, the ALJ addressed Listing 1.04 in a single paragraph that tracked the language of the listing's criteria

without any citations to the record.  Under these circumstances, the Commissioner's analysis—even if it might prevail ultimately when considered by the ALJ in the first instance—constitutes *post hoc* rationalization.  *Cf. Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *19 (W.D.N.Y. Mar. 10, 2015) ("In this case, the ALJ's determination does not make clear whether he considered the Listing, much less which of the Listing criteria Yeomas failed to establish.").  Remand will be necessary to develop a more detailed analysis of plaintiff's possible eligibility under Listing 1.04.

In ordering remand, the Court takes no position on how the Listing 1.04 analysis should look or what the ultimate determination of disability should be.  The Court also will not address any of the other issues that the parties have raised.  Upon remand, the Commissioner is free to address plaintiff's other arguments as might be appropriate.

### III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 10).  The Court grants plaintiff's cross-motion (Dkt. No. 7) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order.  The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: May 20, 2020